UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CLARE EUGENE PRISBREY,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13-CV-01024-DBP<br><br>Magistrate Judge Dustin B. Pead |

This matter came before the Court under 28 U.S.C. 636(c). (Dkt. No. 10.) Plaintiff, Clare Eugene Prisbrey, ("Mr. Prisbrey") appeals the Commissioner of Social Security's decision denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C.§§ 401–433. (Dkt. No. 2). Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court **REVERSES** and **REMANDS** the Commissioner's decision for further consideration.

## BACKGROUND

Mr. Prisbrey filed an application for Disability and Disability Insurance Benefits ("DIB") on June 13, 2006. (Tr. 81–86). His claim was initially denied on June 11, 2007 (*Id.* at 48), and upon reconsideration on March 31, 2007. (*Id.* at 49). Mr. Prisbrey timely requested a hearing before an Administrative Law Judge ("ALJ") on June 14, 2007. (*Id.* at 59).

Administrative Law Judge, Michael B. Kennett presided over a hearing on July 30, 2008, in St. George, Utah. (*Id.* at 26–47). The ALJ issued a decision finding Mr. Prisbrey not disabled on November 7, 2008. (*Id.* at 11–25). The Appeals Council denied Mr. Prisbrey's request for review on November 15, 2010. (*Id.* at 1–5). This Appeals Council denial constituted the Social

Security Commissioner's final administrative decision in this case.  Mr. Prisbrey commenced a civil action by filing a complaint in the United States District Court for the District of Utah.

In an order dated September 16, 2011, and a judgment issued September 19, 2011, the Utah District Court remanded the case to the Commissioner based on the Defendant's Unopposed Motion to Remand.  (Tr. 666–68).  In an order dated March 18, 2013, the Appeals Council remanded the case to the Administrative Law Judge.  (*Id.* at 676–79).  Thereafter, a remand hearing was held on August 16, 2013, in St. George, Utah before Administrative Law Judge Norman L. Bennett. (*Id.* at 599–645).  Judge Bennett issued his decision on October 3, 2013, again finding Mr. Prisbrey not disabled. (*Id.* at 573–98).  On November 14, 2013, Mr. Prisbrey brought this action to appeal the Commissioner's decision pursuant to 24 U.S.C. § 405(g), which provides for judicial review of the defendant's final decision.

### A.  Factual History

Mr. Prisbrey injured both knees in an automobile accident in 1989.  (*Id.* at 168). Surgery was performed on both knees.  (*Id.* at 168).  Testing performed in 1991 showed that he had bilateral osteochondritis dissecans in his knees.  (*Id.* at 344).  Another injury in 1992 reinjured his right knee.  (*Id.* at 168).  At that time, doctors opined that he could not return to work until another surgery was performed in August 1992.  (*Id.* at 170, 189).  Another surgery was performed in May 1993.  (*Id.* at 191).  An arthroscopic debridement of the right knee was performed in December 1993.  (*Id.* at 193).  At this time, a residual functional capacity (RFC) assessment filled out by his treating physician opined that Mr. Prisbrey could stand/walk for no more than two hours of an eight hour workday and could lift no more than ten pounds occasionally.  (*Id.* at 196).  He also opined that Mr. Prisbrey could not return to his previous work.  (*Id.* at 197).

In June 2003, Mr. Prisbrey injured his left knee. (Tr. 227). He underwent a left knee arthroscopy in July 2003. (*Id.* at 219). In January 2004, he underwent a total knee arthroplasty on the left knee. (*Id.* at 231). He was diagnosed with osteoarthritic change in both knees. (*Id.* at 236). Imaging showed that Mr. Prisbrey had "virtually no cartilage" in the lateral joint line of his left knee. (*Id.* at 239). At this point, Mr. Prisbrey had undergone six surgeries on his right knee and two surgeries on his left knee. (*Id.* at 237). Imaging studies in October 2005 showed that both Mr. Prisbrey's right and left knees had no articular cartilage space and bone-on-bone eburnation. (*Id.* at 243). Dr. David Moore opined that this left him "unhireable for any work that involved walking or standing for more than a few steps." (*Id.* at 243).

In April 2007, he underwent a second left knee arthroplasty. (*Id.* at 481). Following this surgery, Mr. Prisbrey began experiencing stabbing pain, bruising, and tightness in his leg. (*Id.* at 486). In 2009, after hiking he said his right knee had been painful with clicking, catching, and locking. (*Id.* at 539). His physician discussed treatment options, including anti-inflammatory medications, surgical treatment, and activity modification. (*Id.* at 540).

Mr. Prisbrey also suffers from back pain. Mr. Prisbrey showed decreased range of motion in his spine, tenderness to palpitation, discomfort moving from sitting to standing, and antalgic gait. (*Id.* at 472, 477). In addition to his musculoskeletal issues, Mr. Prisbrey has numerous other impairments, including gray outs, cardiac issues, rib separation, shoulder issues, neuropathy, and mental issues. (*Id.* at 199, 200, 211, 427, 558, 624, 800, 836, 886).

With regard to medical opinions in the record, in December 2006, Mr. Prisbrey underwent a consultative exam with Dr. Courtney Empey who opined that Mr. Prisbrey was limited in his ability to walk, stand , lift, carry, bend, stoop, and squat. (Tr. 280).

In 2007, Mr. Prisbrey was examined by Dr. Bradley Root. (Tr. 301). Dr. Root noted that Mr. Prisbrey had mild decreased grip strength and sensation in his left hand. (*Id.* at 304). He also noted reduced range of motion in Mr. Prisbrey's cervical and lumbar spine. (*Id.* at 305). MRIs of Mr. Prisbrey's spine from March 2007 showed narrowing in the mid and lower thoracic spine with a disc bulge at T11-T12. (*Id.* at 323). His cervical spine also showed disc space narrowing with disc bulges at the C4-C5, C5-C6, and C6-C7 levels. (*Id.* at 324). Mr. Prisbrey showed mild degenerative disc disease in his lumbar spine. (*Id.* at 334). An MRI of his sternum showed bone marrow edema. (*Id.* at 336). A bone image of Mr. Prisbrey's body showed increased activity in this area which correlated with the MRI findings of Mr. Prisbrey's sternum. (*Id.* at 339).

In March 2007, Mr. Prisbrey's treating physician, Dr. McKay Christian ("Dr. Christian"), noted that Mr. Prisbrey could not sit or stand for more than five to ten minutes at a time. (*Id.* at 333). In July 2008, Dr. Christian opined that Mr. Prisbrey's pain would constantly interfere with his ability to work and his stress would frequently interfere with his ability to work. (*Id.* at 535). He opined that Mr. Prisbrey could not walk one city block, could not walk on uneven ground, could not climb steps, would have problems with balance when ambulating, and would need to lie down or recline up to four hours of an eight hour workday. (*Id.* at 536). Dr. Christian stated Mr. Prisbrey could sit no more than one hour and stand/walk for no more than one hour of an eight hour workday. (*Id.* at 536). He opined that Mr. Prisbrey would need to use an assistive device to stand or walk and could lift no more than five pounds. (*Id.* at 537). Finally Dr. Christian stated that Mr. Prisbrey would be off task more than thirty percent of the workday due to his impairments and would miss more than six days of work each month. (*Id.* at 538). Dr. Christian opined that Mr. Prisbrey could not return to competitive employment. (*Id.*).

On July 9, 2013, Dr. Christian provided another RFC assessment confirming that Mr. Prisbrey would be off-task more than thirty percent of the workday due to his impairments and would miss five or more days of work each month. (Tr. 830).

A mental health evaluation performed by Dr. Durham showed that Mr. Prisbrey was mildly impaired in his ability to interact appropriately with others and respond to changes in a routine work setting. (*Id.* at 554). A second mental evaluation from Dr. Ottesen provided that Mr. Prisbrey's inability to properly interact with others would preclude his performance for fifteen percent or more of the workday. (*Id.* at 571–72).

### B. Hearing Testimony

Mr. Prisbrey testified that both knees had been surgically replaced. (*Id.* at 612). However, his right knee was already wearing down to the point that a grinding sound can be heard when he moves it, a sound noted at the hearing. (*Id.* at 611). He has difficulty walking on hills or inclines and must alternate legs when standing. (*Id.* at 612, 613). He has pain in his back that causes his left foot to feel numb. (*Id.* at 614–15). He testified he has difficulty grasping with his hands and has numbness in his hands. (*Id.* at 616–17). Mr. Prisbrey has been diagnosed with a separated sternum. (*Id.* at 618). He has pain in both of his shoulders and experiences daily headaches. (*Id.* at 620). Mr. Prisbrey testified he has a mood disorder that causes anger, frustration, moodiness, and suicidal thoughts. (*Id.* at 624–25).

### C. ALJ Opinion

In his decision, the ALJ found that Mr. Prisbrey suffered from the severe impairments of osteoarthritis of both knees status post multiple surgeries, degenerative disc disease of the lumbar spine, history of seizure disorder, degenerative disc disease of the cervical spine, degenerative

disc disease of the thoracic spine, and obesity.  (Tr. 579).  At step three he found that Mr. Prisbrey did not meet a listing.  (*Id.* at 581).

The ALJ found that Mr. Prisbrey can perform sedentary work with lifting and carrying five pounds frequently and ten pounds occasionally, standing and/or walking two hours and sitting six hours in an eight hour workday.  In addition, due to pain he was limited to simple repetitive tasks and, due to his seizure disorder he could not work at heights or around dangerous moving machinery.  (*Id.* at 582).   With this RFC assessment, the ALJ found Mr. Prisbrey could not perform his past relevant work, but that there were other jobs available in the national economy that Mr. Prisbrey could perform.   (*Id.* at 587–588). Therefore, the ALJ found that Mr. Prisbrey was not disabled.  (*Id.* at 589).

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether her findings are supported by "substantial evidence and whether the correct legal standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (quotation omitted).  The Court may neither reweigh the evidence, nor substitute its judgment for the Commissioner's. *Id*.

In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.  *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).  However, the reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ.  *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).  Further, the Court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the

matter been before it de novo.'" *Lax*, 489 F.3d at 1084.  Lastly,"[t]he failure to apply the correct legal standard or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs and oral arguments.  The Court finds as follows:

## ANALYSIS

Plaintiff raises three issues on appeal: first, whether the ALJ erred by failing to follow the instructions of the Appeals Council on remand; second, whether the ALJ erred by failing to properly evaluate the medical opinions of record; and third, whether the ALJ erred by failing to properly evaluate Mr. Prisbrey's credibility.  For reasons set forth below, the Court finds that the ALJ erred in evaluating the opinions of treating physician Dr. Christian as directed by the Appeals Council.[1]  Therefore, the Court will not reach the merits of Mr. Prisbrey's credibility.

On appeal, Mr. Prisbrey challenged the ALJ's findings as to the medical opinions in the record.  The Appeals Council remand order dated March 18, 2013 specifically stated that upon remand the ALJ was to "[g]ive further consideration to the treating and examining source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence." (Tr. 678).  The Commissioner argued that the ALJ did follow the orders given by the Appeals Council on remand and

---

[1] The Court finds that that the Appeals Council's order directed the ALJ to comply with the applicable Agency policy.  The failure to comply with Agency policy provides a sufficient basis for the Court's decision to remand the matter to the Commissioner.  In other words, the Court finds error, independent of the Appeals Council's order. Consequently, the Court does not need to address Mr. Prisbrey's allegation that the failure to comply with the Appeals Council's order is reversible error standing alone.

specifically, that the ALJ found that Dr. Christian's opinions were based solely on subjective evidence. (Dkt. No. 18 at 10).

In this case, Dr. Christian, Mr. Prisbrey's treating physician, provided several opinions. In March 2007, Dr. Christian, noted that Mr. Prisbrey had multiple medical problems and could not sit or stand for more than five to ten minutes at a time. (Tr. 333). In July 2008, Dr. Christian opined that Mr. Prisbrey's pain would constantly interfere with his ability to work and his stress would frequently interfere with his ability to work. (*Id.* at 535). He opined that Mr. Prisbrey could not walk one city block, could not walk on uneven ground, could not climb steps, would have problems with balance when ambulating, and would need to lie down or recline up to four hours of an eight hour workday. (*Id.* at 536). Dr. Christian stated Mr. Prisbrey could sit no more than one hour and stand/walk for no more than one hour of an eight hour workday. (*Id.*). He opined that Mr. Prisbrey would need to use an assistive device to stand or walk and could lift no more than five pounds. (*Id.* at 537).

On July 9, 2013, Dr. Christian provided another RFC assessment confirming that Mr. Prisbrey would be off-task more than thirty percent of the workday due to his impairments and would miss five or more days of work each month. (*Id.* at 830). Either of these opinions if accepted would direct a finding of disabled; however, the ALJ rejected these opinions:

> Dr. Christian's reports were based entirely on the claimant's subjective complaints and were grossly inconsistent with the totality of the evidence. There was no objective evidence elicited during any of Dr. Christian's examinations or in the medical evidence that supported a finding that the claimant had such extreme limitations in sitting, standing, and/or walking. This suggested patient advocacy and discredited Dr. Christian's opinions.

(Tr. 586).

8

The Court finds that the ALJ's findings were not accompanied by any citations to the record that support the ALJ's decision despite clear direction from the Appeals Council that the ALJ must explain the weight afforded to treating and examining source opinions, and that all medical opinions were to be evaluated pursuant to 20 CFR § 404.1527 and Social Security Rulings 96-2p and 96-5p. (Tr. 678). The ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. This Court finds that the ALJ failed to provide clear reasons for the weight accorded to Dr. Christian's opinions. Furthermore, there is no explanation of why he feels Dr. Christian's opinions are nothing more than "patient advocacy." When choosing "to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).

Therefore, in this case, the ALJ committed legal error by failing to comply with the Appeals Council remand order by not evaluating Dr. Christian's opinions in accordance with the requirements of the Agency rulings and regulations. Furthermore, the ALJ did not cite to specific evidence supporting his assertion that Dr. Christian's reports were "grossly inconsistent with the totality of the evidence." Accordingly, he was not sufficiently specific to make clear to this Court the reasons for the weight afforded to those opinions.

For these reasons, this case must be reversed and remanded for a proper evaluation of Dr. Christian's opinions. On remand, the ALJ must expressly state the weight that is being given to

the medical opinions of record, particularly that of the treating physicians. The analysis of medical opinion evidence must clearly reflect that the ALJ has considered the factors outlined in 20 CFR § 404.1527 and Social Security Rulings 96-2p and 96-5p as previously directed in the remand order.

Although the Court is reluctant to dictate to the ALJ the manner in which he or she must draft a decision, the Court notes that this is the second time the Court has remanded this matter for proper evaluation of the treating physician opinions. The Court suggests that the ALJ strive to make his or her evaluation of those opinions explicit by including citations to the applicable regulations and rulings, and citations to specific pages of the transcript the support the ALJ's reasoning. For each opinion regarding the effect that Mr. Prisbrey's limitations have upon his ability to work, the ALJ should consider explicitly stating whether the opinion is to be accorded controlling weight (as provided in 20 C.F.R. §404.1527(c)(2)), and if not, explain his or her reasoning. In addition, if the opinion is not accorded controlling weight, the ALJ should consider explicitly stating the weight to which each of these opinions is entitled, explaining which sections of 20 C.F.R. §404.1527(c)(2)–(6) he or she applied in determining the weight to accord the opinion, and citing to specific portions of the record supporting his or her rationale.

The Court does not express any opinion as to whether Mr. Prisbrey is or is not disabled. That is a decision left to the Commissioner as the finder of fact.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court **REVERSES** and **REMANDS** this case to the Commissioner. On remand, the Commissioner will re-evaluate the opinions of treating physician, Dr. Christian, as outlined by 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p. The Court expresses no opinion about whether the ALJ's findings at any step of the

evaluation process will change. Nonetheless, on remand, the ALJ should address the aforementioned errors and thoroughly re-evaluate the evidence as instructed above.

DATED this 9th of December, 2014.

_____
Dustin B. Pead
United States Magistrate Judge